# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **DAYNA CHARLAYNE SMITH**, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 11 C 7034 |
| **CAROLYN W. COLVIN**, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Dayna Charlayne Smith ("Smith") seeks judicial review pursuant to the Social Security Act ("Act"),[1] more specifically 42 U.S.C. §§ 405(g) and 1383(c)(3), of the final decision of then Commissioner of Social Security Michael Astrue ("Commissioner")[2] denying Smith's claim for social security disability income ("SSDI") and supplemental security income ("SSI"). Smith has moved for summary judgment under Fed. R. Civ. P. ("Rule") 56 or alternatively to remand for further proceedings, while Commissioner seeks affirmance of her decision through her own motion for summary judgment. For the reasons stated in this memorandum opinion and order, Smith's motion to remand is granted, while Commissioner's motion for a summary judgment of affirmance is denied.

---

[1] All statutes will be cited "Section --," using the Title 42 numbering rather than the Act's internal numbering. All portions of 20 C.F.R. will be cited "Reg. § --." Record references will be cited "R. --." Finally, Commissioner's memorandum will be cited "Comm. Mem. --."

[2] Carolyn Colvin is now the Acting Commissioner, having replaced Commissioner Astrue. Fed. R. Civ. P. 25(d) provides for her automatic substitution as a party, and both the case caption and the text treat her as such (including attributing to her the final decision at the administrative level, even though it antedated her taking office).

**Procedural Background**

On February 10, 2009 Smith filed an application for SSDI and SSI, alleging an onset of disability on December 23, 2008 (R. 13). Those claims were initially denied on June 19, 2009, and Smith's appeal for reconsideration was also denied on January 8, 2010 (id.). Smith then filed a request for a hearing on January 12, 2010 (id.), and Administrative Law Judge Kimberley Nagle ("ALJ Nagle" or simply "the ALJ") held that hearing on February 17, 2011 (R. 33).

On March 2, 2011 ALJ Nagle ruled that Smith was not disabled because her impairments did not meet or medically equal any of the impairments listed in the regulations (R. 16). Furthermore, the ALJ concluded that Smith's impairments were also not disabling after concluding that a significant number of jobs that Smith could perform existed in the national economy (R. 25). Smith requested review by the Appeals Council, but her request was denied on August 4, 2011 (R. 1), rendering ALJ Nagle's ruling the final decision of the Commissioner (id.). On October 5, 2011 Smith filed this action.

**General Background**

Smith, born on February 3, 1964, was 47 years old when ALJ Nagle determined that she was not disabled (R. 173). She has been married since 1997, but at the time of her application she stated that she and her husband had separated (id.). Smith has two young daughters for whom she cares with the aid of her sister Michelle Abrams ("Abrams") (R. 226, 262).

Smith has a high school education and had also completed two years of college before ceasing her education in 1985 (R. 207). Since 1985 Smith has worked primarily in the insurance industry, but in recent years she has worked at various jobs in the retail industry (R. 213). Most recently, from September to December 2008 she worked as a fragrance model for a retail store, passing out perfume samples to potential customers (R. 214).

Smith's application for disability benefits asserted that several medical conditions prevent her from working. That application identified the causes of her inability to work as kidney failure, liver cirrhosis, gall bladder issues, alcoholic hepatitis and depression (R. 174-75). Smith asserts that those conditions severely restrict her ability to work.

**Medical Evidence**

Smith's medical records show a longstanding diagnosis of depression and alcoholism dating back to at least December 1997 (R. 654). Smith's medical problems were substantially enhanced beginning in early 2008, leading to numerous hospital and doctor visits since that time. In March 2008 Smith began complaining of vomiting, diarrhea and loss of appetite. Smith's primary physician Dr. Corinna Wojcik diagnosed her with diarrhea, weight loss, depressive disorder and enlarged lymph nodes (R. 305).

In October 2008 Smith went to the hospital with complaints of nausea, vomiting and diarrhea. During that visit the doctors noted that Smith suffered from alcohol abuse (R. 486). Soon after that visit Smith entered an alcohol rehabilitation program at Linden Oaks for five days in December 2008 (R. 347).

In January 2009 Smith again went to the hospital with complaints of abdominal pain that had lasted a week. Diagnosing physician Dr. Keith Monson identified her as suffering from renal failure and an inflamed gallbladder (R. 344-45). Dr. Monson specifically assessed Smith as suffering from alcoholism and elevated liver enzymes, which were likely the result of alcoholic cirrhosis, as well as inflammation of the gallbladder (R. 477). Two other doctors at the hospital -- Robert King and Anis Rauf -- concluded that Smith suffered from poor appetite, a 30-pound weight loss, chronic vomiting, chronic diarrhea and abdominal pain (R. 339). Based

on those conclusions Drs. King and Rauf diagnosed Smith with acute renal failure, hypertension, depression, alcohol abuse, chronic diarrhea and anemia (id.).

Later that month Smith underwent testing on her gallbladder, confirming that it was indeed inflamed (R. 474). Then in March 2009 Dr. Monson diagnosed Smith with inflammation of the gallbladder as well as an umbilical hernia, and he performed a surgical operation to remove her gallbladder and repair the hernia (R. 322).

By that time Smith had filed her disability benefits claim with the Social Security Administration. As a result she underwent a psychological evaluation in late May 2009 to assess her mental health status to aid in the adjudication of her claim (R. 409). In her evaluation Dr. Kelly Renzi found Smith's concentration to be "average" and her memory to be "poor." Smith said that she had no complications understanding directions and that her mood was depressed. In her conclusion Dr. Renzi diagnosed Smith as meeting the criteria for a depressive disorder and alcohol dependence (R. 411).

In June 2009 Smith underwent another mental health evaluation conducted by Dr. Patricia Beers (R. 413). Dr. Beers found that Smith had "mild" limitations in both her daily living activities and in maintaining social functioning (R. 423). She also found that Smith had a "moderate" limitation in maintaining concentration, persistence or pace and that she had also suffered one or two episodes of decompensation -- each of extended duration (id.). Dr. Beers concluded that Smith suffered moderate limitations in her ability to understand and remember detailed instructions, her ability to carry out detailed instructions and her ability to maintain attention and concentration for an extended period of time (R. 427). Lastly, Dr. Beers found Smith to have moderate limitation in her ability to set realistic goals or make plans independently of others (R. 428).

Dr. Beers' diagnosis concluded that Smith suffered from an affective disorder characterized by loss of interest in activities, appetite disturbance, decreased energy and difficulty in concentration or thinking (R. 416). She also diagnosed Smith with a substance addiction disorder (id.). Based on her findings and diagnosis, Dr. Beers concluded (R. 425):

> Claimant is able to perform basic household chores appropriately. Her social skills are intact. Her memory is somewhat limited; however, other cognitive functions remain intact. Memory difficulties suggest she is best suited to simple one-to-two step tasks and could accomplish more routine tasks. Adaptive capacities remain grossly intact.

Dr. Beers believed that Smith was "capable of [substantial gainful activity]" (R. 429). Dr. Glenn Pittman reviewed and affirmed Dr. Beers' findings in December 2009 (R. 714-16).

Aside from undergoing psychological evaluation, Smith also underwent two residual functional capacity ("RFC") assessments in December 2009 to document any physical limitations she might have. Dr. Ernst Bone performed the first RFC assessment and concluded that Smith could (1) occasionally lift 50 pounds, (2) frequently lift 25 pounds, (3) stand or walk for 6 hours out of an 8 hour work day and (4) sit for 6 hours out of an 8 hour work day (R. 400). Dr. Bone based his limitations for sitting, standing and walking on the fatigue Smith experienced due to her hepatitis (id.). Smith's second RFC assessment was performed by Dr. Young-Ja Kim, who reached an identical assessment (R. 717-18). Dr. Kim noted that Smith's allegations of physical limitations were partially credible, but her severe impairments were not at the listing level at the time of his assessment and, moreover, were related to her alcohol abuse. In his medical opinion Smith's impairments were acute (R. 724).

On November 13, 2009 Smith went to the hospital with complaints of frequent falls (R. 788). On December 29, 2009 she was admitted to the hospital after reportedly having a seizure while at the grocery store -- a seizure that the doctor believed stemmed from alcohol

withdrawal (id.). Smith's primary diagnosis was an alcohol-induced seizure with several secondary diagnoses, including alcoholic hepatitis and major depression (R. 802). In early February 2010 Smith visited Dr. Thelma Marin with complaints of a headache that she claimed resulted after she passed out and fell down the stairs. Dr. Marin diagnosed Smith with an intracranial hemorrhage, alcohol abuse, liver cirrhosis, depression, delirium tremens and seizures (R. 970-71).

On February 20, 2010 Smith voluntarily entered an alcohol rehabilitation program with the Lutheran Social Services of Illinois and spent four days successfully completing the program before being discharged (R. 870-80). Smith soon relapsed and was brought to the emergency room on April 5, 2010 after drinking alcohol and taking a combination of pills (R. 855). The doctor diagnosed her with major depression, suicidal ideation, alcohol abuse, alcoholic hepatitis and mild anemia (id.). Four months later, on August 9, 2010, a similar episode occurred (R. 726, 747). Smith then entered a rehabilitation program at the Share Center on August 18, 2010 and stayed there until September 14, 2010 (R. 726).

On November 5, 2010 Smith was given a psychiatric evaluation for her depression by the Department of Psychiatry at Rush Hospital (R. 951). There the psychiatrist evaluated Smith's affect as tearful and her mood as depressed, while observing that she had no discernable memory difficulties with limited insight and good judgment (R. 957-58). Smith was diagnosed with a depressive disorder and alcohol dependence (id.).

**Smith's ALJ Hearing Testimony**

Smith testified at the February 17, 2011 hearing about her job history, her medical impairments and her day-to-day activities. Smith testified that she had held two part-time jobs since the onset of her alleged disability in December 2008 and that she had been fired from the

last one due to poor work performance (R. 43-44, 57-58). She explained that her poor performance was caused by her stomach problems, gastritis, acid reflux and diverticulitis, stating that she could not "hold a meal" (R. 46). She further testified that she was experiencing "oil leakage," an involuntary bowel movement stemming from her pancreatitis, stating that according to her doctor the leakage was increased by stress (R. 45). Overall Smith stated that she believed her work performance was poor due to lack of concentration, depression, stomach issues and having to take frequent bathrooms breaks due to diarrhea, vomiting and cramping (R. 47-48).

When asked to explain what impairments prevented her from working, Smith testified that her depression and pancreatitis made it very difficult for her to hold a job (R. 49-51). She explained that her depression was heightened by many problems in her life that caused a lack of focus on the job (R. 49). Aside from her depression, Smith noted that her pancreatitis caused her problems with digesting food that caused cramping and frequent bathroom trips due to diarrhea that "seep[ed] out" (R. 48, 51). She testified that her pancreatitis was precipitated by stress, which was primarily caused by her financial problems (R. 55-56). Lastly Smith testified about her home life and the details of her day-to-day activities (R. 42, 47-49), stating in part that she rarely drove anymore because her pancreatitis caused cramping and she could not go anywhere without having to stop en route to use the bathroom (R. 59).

**Vocational Expert's Testimony**

At the hearing ALJ Nagle asked Vocational Expert Leanne Caire ("Caire") about the availability of jobs for an individual with four separate hypothetical sets of characteristics. ALJ Nagle asked Caire to assume an individual that was the same age as Smith with the same level of education and work history (R. 69). Based on two of ALJ Nagle's hypotheticals that incorporated her RFC for Smith, Caire testified that the hypothetical individual could perform

jobs such as machine off-bearer (4,800 regional jobs available), packager (5,400 regional jobs available) and sorter (2,200 regional jobs available) (R. 69-73). In response to the other two hypotheticals involving an individual who could not work a job with quotas or had difficulty maintaining pace, Caire testified that such an individual would be precluded from all competitive employment (R. 73-74).

**Michelle Abrams' Testimony**

Smith's sister Michelle Abrams ("Abrams") testified at the hearing regarding her observations of Smith's limitations. Abrams stated that she believed Smith's depression "came into play" before her alcoholism and that the depression in fact precipitated the alcoholism (R. 80). She likewise testified that other members of her family, including her older sister and her mother, had histories of depression (R. 80-81). Abrams stated that Smith cried frequently in recent years and that her depression had gotten worse with age. She also said that Smith needed help to perform daily activities and that she got fatigued and disoriented easily (R. 83).

## Standard of Review and Applicable Law

In reviewing Commissioner's decision this Court considers the legal conclusions de novo (Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005)). But because by contrast factual determinations receive deferential review, courts may not "reweigh the evidence or substitute [their] own judgment for that of the ALJ" and will affirm Commissioner's decision if it is supported by substantial evidence (id.). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted)).

As cases such as Haynes, 416 F.3d at 626 (internal quotation marks and citation omitted) teach:

> In rendering a decision, the ALJ must build a logical bridge from the evidence to
> his conclusion. The ALJ need not, however, provide a complete written
> evaluation of every piece of testimony and evidence.

Hence "[i]f the Commissioner's decision lacks adequate discussion of the issues, it will be remanded" (Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009)). Reversal is also required if the ALJ has committed an error of law, regardless of how much evidence supports his or her determination (Binion on behalf of Binion v. Chater, 108 F.3d 780, 782 (7th Cir. 1997)).

To qualify for benefits a claimant must be "disabled" within the meaning of the Act (Liskowitz v. Astrue, 559 F.3d 736, 739-40 (7th Cir. 2009), citing Section 423(a)(1)(E)). "Disability" is defined in Section 423(d)(1)(A) as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Claimants must also demonstrate that the disability arose during the periods when they were insured (Section 423(a)(1)(A) and (c)(1)).

Social Security regulations set forth a sequential five-step inquiry that must be conducted to determine whether a claimant satisfies that definition (Liskowitz, 559 F.3d at 740, citing Reg. §§ 404.1520 and 416.920). In that inquiry the ALJ must determine (Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001), citing Reg. § 404.1520):

> (1) whether the claimant is currently employed, (2) whether the claimant has a
> severe impairment, (3) whether the claimant's impairment is one that the
> Commissioner considers conclusively disabling, (4) if the claimant does not have
> a conclusively disabling impairment, whether she can perform her past relevant
> work, and (5) whether the claimant is capable of performing any work in the
> national economy.

At step five of the analysis the ALJ may use the Medical Vocational Guidelines to determine whether the claimant's exertional limitations prevent her from performing any work (Fast v.

Barnhart, 397 F.3d 468, 470 (7th Cir. 2005)). If, however, the claimant suffers from both exertional and nonexertional impairments, the Medical Vocational Guidelines are not determinative but rather "provide a framework for consideration" (id. at 471, quoting Reg. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2)).

**ALJ Opinion**

After reviewing the evidence and applying the five-step analysis, ALJ Nagle made a series of findings (set out here in paraphrased form rather than verbatim):

    1. Smith met the insured status requirements of the SSA through December 31, 2013 (R. 16).

    2. Smith has not engaged in substantial gainful activity since the alleged onset date of December 23, 2008 (id.).

    3. Smith has had "severe impairments" since the alleged onset date, including pancreatitis, alcoholic hepatitis, depression and alcohol abuse that was in recent remission (id.).

    4. Since December 23, 2008 Smith has not had an impairment or combination of impairments that meets the listed impairments (id.).

    5. Since December 23, 2008 Smith has had the RFC to perform medium work as defined in Reg. §§ 404.1567(c) and 416.967(c) (R. 18).

    6. Smith has moderate limitations in concentration and persistence (id.).

    7. Smith's limitations require that she receive reminders from supervisors regarding her tasks twice per workday (id.).

    8. Smith's limitations require that she is allowed one five-minute break per hour during the workday (id.).

    9. Smith is limited to performing work that involves one or two-step tasks (id.).

    10. Since December 23, 2008 Smith has been unable to perform any past relevant work (R. 25).

11. Considering Smith's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that she can perform (id.).

12. Smith was not disabled at any time from December 23, 2008 through the date of the decision (R. 27).

This opinion will apply the earlier-stated principles to those findings.

**Analysis of the ALJ's Opinion**

Smith makes several arguments as to why ALJ Nagle's decision should be overturned. Each will be addressed separately, but before that is undertaken there is a threshold consideration, on which the litigants have inexplicably failed to focus, that casts more than a shadow on the ALJ's determination -- the principle that an ALJ's determination of a claimant's disability (or of the absence of any disability) speaks in terms of an onset date, which as to a still-insured claimant could be as late as the time of his or her hearing before the ALJ.

It will be remembered that the two RFC assessments by Drs. Bone and Kim took place in December 2009, while ALJ Nagle did not reach her decision until March 2011. ALJ Nagle -- relying heavily on the vocational expert's conclusions based on the ALJ's hypothetical questions incorporating those RFC determinations -- ultimately determined that Smith had not been disabled at any time since December 23, 2008 and still had the RFC needed to perform "medium work." But given Smith's hearing testimony about her deteriorating condition and the fundamental flaw (discussed next) in the ALJ's determination that challenged her credibility in those respects, it was simply wrong to base a decision that rejected her disability "at any time since December 23, 2008" on the strength of RFC determinations made more than a year before the hearing.

To be sure, ALJ Nagle found that Smith's testimony was not credible as to her need to go to the bathroom repeatedly throughout the day, but that finding does not survive analysis. To begin with, that assessment rests on language that cases exemplified by Bjornson v. Astrue, 671 F.3d 640, 645–46 (7th Cir. 2012) have characterized as meaningless "boilerplate." That does not render its use inherently fatal to a credibility assessment (Filus v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012)), but such assessments will be reversed if the ALJ's conclusions are shown to be "patently wrong" because they are lacking in explanation or support (Elder v. Astrue, 529 F.3d 408, 413-14 (7th Cir. 2008)).

Such is plainly the case here, where ALJ Nagle said that she was partially discounting Smith's credibility because it was "inconsistent with the above residual functional capacity assessment."[3] That rests on a foundation that itself lacks credibility, for it expressly looks to earlier RFC determinations that did not reflect later deteriorating conditions that existed at the time of the hearing. Such bootstrapping deprives the ALJ's assessment of probative force.

Recall as well that Caire's testimony about the existence of jobs that a hypothetical individual with those earlier RFCs could perform contrasted sharply with her testimony that a hypothetical individual with less favorable qualifications would be precluded from all competitive employment. And recall particularly Smith's hearing testimony about her "oil leakage" assertedly caused by her pancreatitis and the obvious constraints that such a condition

---

[3] Here are ALJ Nagle's words (R. 20, emphasis added):

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible <u>to the extent they are inconsistent with the above residual functional capacity assessment</u>.

imposes on the types of jobs that Caire found available under the very different first set of hypotheticals.

That is of course only exemplary of the problem caused by the ALJ's failure to take Smith's date-of-hearing condition adequately into account. It is unnecessary to repeat, relatedly, such earlier-discussed added evidence as (1) the fact that Smith was hospitalized on multiple occasions between the dates of her RFC assessments and the hearing date and (2) her testimony as to ongoing physical symptoms that (if credited) would certainly preclude her from employment.

It is the duty of the ALJ to develop a full and fair record (Smith v. Apfel, 231 F.3d 433, 437 (7th Cir. 2000)), and that was not done here as to Smith's condition up to and including the time of the hearing. On remand the ALJ must resolve Smith's claim in terms of possible disability onset dates up to the date of the new hearing, an evaluation that would appear to call for one or more new RFC assessments that take into account Smith's full range of symptoms up to the date of the hearing (or her date last insured, whoever comes first) (see 20 C.F.R. § 404.1517).

**Other Grounds for Remand**

Even if what has just been said had not required a remand here, that same result would be called for by one or more individual flaws in the ALJ's analysis. Key among those is Smith's argument that ALJ Nagle's step three analysis with respect to Smith's physical impairments was perfunctory. As to listed impairments, at a minimum "an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing" (Barnett v. Barnhart, 381 F.3d 664, 668 (7th Cir. 2004)). Where an ALJ fails to do so and "the Commissioner's decision lacks

evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded" (Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002)).

ALJ Nagle's analysis as to Smith's physical limitations was indeed perfunctory and did not sufficiently articulate what evidence was employed in reaching her conclusion. In contrast to her expenditure of numerous paragraphs analyzing Smith's mental impairments (R. 16-18), the entirety of ALJ Nagle's analysis of Smith's physical impairments is one sentence long (R. 16):

> The medical evidence does not document listing-level severity and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination.

That explanation provides no reference or citation to any specific medical evidence that supports such a finding and is thus, in the most basic sense, perfunctory. Viewed either alone or, a fortiori, in combination with the ALJ's error in not considering a more recent RFC assessment, that clearly warrants remand.

Smith also argues that ALJ Nagle violated SSR 96-8p by failing to perform a function-by-function analysis and to discuss in a narrative fashion all medical and non-medical evidence in the record (citing SSR 96-8p, 1996 WL 374184, at *1, *7 (1996)). Here the ALJ's RFC assessment of Smith began with a lengthy narrative discussion of her medical history, including objective medical evaluations performed by various physicians in connection with the administrative proceeding (R. 19-25). Ultimately ALJ Nagle concluded that Smith's RFC was limited to medium exertional work, a conclusion supported by the RFC assessments performed by Drs. Bone and Kim. (R. 21, citing R. 399-406, 717-24). That determination too was problematic. While ALJ Nagle may have "minimally articulate[d] [her] reasoning" in her lengthy discussion (Knox v. Astrue, 327 F. App'x 652, 657 (7th Cir. 2009)), once again a consideration of more recent medical evidence is in order.

Smith next contends that no medical evidence supported ALJ Nagle's assessment that Smith's physical impairments limited her to medium work. ALJ Nagle did specifically discuss the Drs. Bone and Kim RFC assessments, both of which concluded that Smith was capable of performing the exertional requirements of medium work (R. 21). ALJ Nagle accorded both of those opinions significant weight, thereby providing a logical bridge between the evidence and her conclusion (R. 24). Like treatment should be given on remand to the updated fully developed record.

Smith's last attack on the RFC assessment is that ALJ Nagle failed to give controlling weight to the conclusions of Smith's treating physicians. Commissioner argues in response that Smith has failed to point to any evidence in the record by a treating physician that speaks to Smith's functional limitations or contradicts any of the opinions of Smith's non-treating physicians. Commissioner notes that ALJ Nagle found no treating source opinion in the record (Comm. Mem. 6, citing R. 24). Just how that issue plays out on remand will of course be a function of the anticipated updated RFC evaluation or evaluations.

**Other Contentions by Smith**

Smith also advances several arguments that this Court finds unpersuasive. Those will be discussed briefly here in an effort to provide some direction as to the proceedings on remand.

Smith urges that ALJ Nagle failed to utilize the special technique required to assess mental illnesses as specified in Reg. § 404.1520a(b). Such cases as Richards v. Astrue, 370 F. App'x 727, 730 (7th Cir. 2010) make clear that an ALJ's discussion of whether a claimant's

mental impairment is severe is to be performed at step two of the five-step analysis[4] and that discussion of the degrees of limitation in the four specified areas listed in the regulations at a later point in the analysis constitutes error. But such an error may be harmless if the ALJ remedies her mistake through subsequent analysis and in doing so renders remand futile (Craft v. Astrue, 539 F.3d 668, 675 (7th Cir. 2008)). Here, while ALJ Nagle erred by performing the analysis at step three, her error was harmless because the analysis would have proved Smith's depression to be severe under either step two or step three.

Smith also argues that ALJ Nagle failed to document any conditions represented in the "A criteria" when analyzing whether Smith's mental impairments qualified as disabling under Listing 12.04 of Reg. Pt. 404, Subpt. P, App. 1. For an impairment to be considered disabling under that listing, a claimant must either (1) satisfy the requirements of both criteria A and B or, alternatively, (2) satisfy the requirements of criterion C. Smith's challenge to ALJ Nagle's analysis rests on the premise that an ALJ must discuss and conclude that a claimant fails to satisfy both criteria A and B before the ALJ can properly conclude that the claimant does not qualify as disabled under Listing 12.04. On that score this Court agrees with the decision by Magistrate Judge Cole in Flynn v. Astrue, 563 F. Supp. 2d 932, 941 (N.D. Ill. 2008) that the clarity of the regulations call for the rejection of that position.

In this instance the ALJ's step three analysis concluded that Smith failed to satisfy criterion B because her mental impairments did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation (R. 17). Thus Smith could

---

[4] Reg. § 404.1520a specifies the analysis that the ALJ must perform at that step to determine whether an impairment is severe or not, calling for a specific discussion of how a mental impairment affects a claimant in four areas: (1) activities of daily living, (2) social functioning, (3) concentration, persistence or pace and (4) episodes of decompensation. Reg. § 404.1520a(c)(3).

not have qualified for Listing 12.04 regardless of whether or not she satisfied criterion A, so the ALJ's failure to discuss that criterion was not an error.

Seemingly indefatigable, Smith's counsel next contends that ALJ Nagle's RFC assessment was erroneous because she impermissibly "play[ed] doctor"[5] -- a well-established prohibition. But at the same time an ALJ has the duty to consult the various medical opinions offered to her and explain the weight she accords to the opinions of the medical professionals in the record (McKinzey v. Astrue, 641 F.3d 884, 891 (7th Cir. 2011), citing Reg. § 404.1527(f)).

In completing her RFC assessment of Smith, ALJ Nagle considered the opinion of Dr. Beers that Smith had moderate limitations in concentration and persistence, but that she could still perform "more complex routine tasks" (R. 24, quoting R. 429). ALJ Nagle stated that she gave that opinion "some weight" but that, after hearing the testimony of Smith and Abrams, she believed greater accommodations were necessary to account for Smith's concentration and persistence limitations (id.). In doing so ALJ Nagle did not impermissibly "play doctor," but rather assigned a weight to Dr. Beers' opinion and decided that more was needed to account for limitations based on Smith's subjective testimony. Thus ALJ Nagle stayed within her proper role of assessing medical opinions and resolving conflicts. In any event, this issue should not arise on remand.

Smith has next argued that the ALJ's RFC assessment was erroneous because she failed to consider all medical evidence available in the record. But such cases as McKinzey, 641 F.3d at 891 (citation and internal quotation marks omitted) consistently recognize that an ALJ's RFC

---

[5] Curiously, Smith attacks ALJ Nagle for "playing doctor" even though the ALJ's choice to give Smith the benefit of the doubt led to greater accommodation than Dr. Beers had recommended in her RFC assessment of Smith. If the ALJ had accorded Dr. Beers' opinion greater weight, Smith's RFC would have been much less accommodating.

assessment need only contain an "adequate discussion of the issues," not "a complete written evaluation of the every piece of evidence." Simply put, ALJ Nagle was not required to belabor her analysis with discussion of every malady contained in Smith's medical history.

**Smith's Date Last Insured ("DLI")**

Smith's final argument is that ALJ Nagle erred in her finding, based on a March 2009 Disability Report, that Smith's Date Last Insured ("DLI") would be December 31, 2011 (R. 197). In conflict with that finding, Smith cites to a February 2011 Certified Earnings Record that listed Smith's DLI as June 2014 (R. 194). On remand ALJ Nagle should reexamine Smith's DLI and correct it if necessary.

## Conclusion

ALJs bear a responsibility to provide reasoned explanations for the conclusions that they reach and to do so in compliance with the procedures set forth in the Social Security regulations. While ALJ Nagle provided a thorough discussion of the issues in many respects, this opinion has sought to be equally thorough in explaining why a remand is called for and in providing some guidance for the conduct of the case on remand. As stated at the outset, Smith's motion for a remand is granted and all other relief sought by the parties (each of them seeking an ultimate ruling as a matter of law) is denied.

_____
Milton I. Shadur
Senior United States District Judge

Date: March 19, 2013